Spalding, J.
"We have no hesitation in reversing the judgment of the court of common pleas, and for two reasons:
1. The verdict neither finds the issue nor- the facts upon which the court may pronounce the finding as a conclusion of law. The statute provides that “ no jury shall, in any case, be compelled to give in a general verdict, so that they find a special verdict, and show the truth of the facts, and require the aid of the court.”
Hero they have found no one fact to be true, bu| have simply referred the court to the evidence, and told them if upon that evidence they are of opinion the law of the case is with the plaintiff's, then the jury find for the plaintiffs, etc. It is the game of hide-and-go-seek ” between the court and jury. The evidence is laid before the jury, and they are told to find the facts. The jury la^ the same evidence before the court, and tell them to find the facts and law together. Such practice as this we can not *147 sanction. The parties are disposed to treat this as a special verdict. One of the best special pleaders in this or any other country, has laid down the ruje governing this subject, in this wise: “If in a special verdict, the jury find only the evidence of a material fact, instead of the fact itself, or otherwise omit to find, upon such a fact, either way, no judgment can be rendered upon the finding for either party, since a matter of fact essential to the determination of the cause is left unascertained by the verdict.” Crould’s Pleading, ch. 10, sec. 62
2. We see no reason to find fault with the action of the board of equalization, in the cases of Dempsey & Co., and of Dempsey, Rogers and Ellison, who compose said firm of Dempsey & Co., of the date of April 23, 1850.
*By section 14 of the amendatory tax law, passed February 8, 1847, the board has power “to add to or deduct from the valuation of the personal property, or moneys, or credits of any person returned by the assessor, upon such evidence as shall be satisfactory to said board, whether said return be made upon the oath of such person or upon the valuation of the assessor.”
By the amendatory act passed February 22, 1848, section 14, it is provided that “the annual board of equalization, constituted by section 1, shall at the same time hear complaints and equalize the assessments of all personal property, moneys, and credits, new entries, and new structures, returned for the current year by the assessor, being governed by the provisions of section 4 of the amendatory tax law, passed February 8, 1847.”
We do not hesitate to say that the power “to add to or deduct from the valuation of the personal property,” is committed to the board created by the act of 1848, as fully as to that under the act of 1847. How otherwise could they “ equalize the assessment of all personal property?”
It is objected that the tax-payer had no notice of the action of the board, and that it nowhere appears affirmatively, that they" acted upon evidence of an undervaluation of the property. The law fixes the time of meeting and the place, to wit, the second Monday in April, annually, and at the auditor’s office. This is notice to every citizen who has property, real or personal, returned for taxation.
As to the arbitrary proceedings of the board, in adding to the valuation put upon their personal property by the defendants in *148 error, wo feci bound to presume in favor of a proper discharge of their duty by these officers, and as the law authorizes them to act “upon such evidence as shall be satisfactory to them,” in the absence of any showing to the contrary, the conclusion of law is, that they acted upon sufficient evidence.
The judgment ol the common picas will be reversed, with costs.