Carroll v. Alsup.

# CARROLL v. ALSUP.

## (*Jackson.*    June 8,    1901.)

1. CONSTITUTIONAL LAW.    *Title and subject of general assessment act.*

A statute is not objectionable as embracing more than one subject, or as embracing matter not covered by its title, which, under the title, "An Act to provide more just and equitable laws for the assessment and collection of revenue for State, county, and municipal purposes," etc., enacts, for the assessment of quasi public and manufacturing corporations, a method of assessment different from that applied to other classes of corporations, in that the shares of stock of the former classes of corporations are not to be assessed to stockholders, compensation for the difference being made in the manner of assessing the properties of the companies. (*Post, pp. 266, 267.*)

Act construed: Acts 1899, Ch. 435.

Cases cited and approved: State v. Brown, 103, Tenn., 450; State v. Yardley, 95 Tenn., 546.

Cited and distinguished: State v. McCann, 4 Lea, 1; Murphy v. State, 9 Lea, 373; Mayor v. Lewis, 12 Lea, 180; Ragio v. State, 86 Tenn., 273; Hyman v. State, 87 Tenn., 109; Bank v. Devine Gro. Co., 97 Tenn., 604; Kennedy v. Montgomery County, 98 Tenn., 165.

2. SAME.    *Assessment act not vicious as class legislation, when.*

A general assessment law is not vicious as class legislation which provides a method for the assessment of quasi public and manufacturing corporations different from that applied to other classes of corporations, especially where there are palpable reasons apparent for such classification.    (*Post, pp. 267, 268.*)

Act construed: Acts 1899, Ch. 435.

Cases cited and approved: Railroad v. Harris, 99 Tenn., 684; Bank v. Memphis, 101 Tenn., 154.

23 P—17

Carroll *v.* Alsup.

3. TAXATION. *Method of assessing corporations.*

A provision in a general assessment law does not create an un-
lawful exemption from taxation, but only prescribes a pe-
culiar, but valid, method of assessment, which directs, as to
quasi public and manufacturing corporations, that their cor-
porate property, including their franchises, easements, incor-
poreal rights, and privileges, shall be assessed at actual cash
value, not to be less than the actual cash value of both the
shares of stock and bonded debt, and declaring that this shall
be in lieu of the assessment of the shares to either the corpo-
ration or its stockholders. (*Post, pp. 267–269.*)

Act construed: Acts 1899, Ch. 435.

4. SAME. *State Board of Equalization.*

The State Board of Equalization does not lose the power to com-
plete its work in equalizing the taxes of a county by returning
the assessment roll, pending the consideration of a county, to
the County Court Clerk, for a temporary purpose, and the
board may, in such case, recall the roll and complete its work.
(*Post, p. 269.*)

Act construed: Acts 1899, Ch. 435.

5. SAME. *Same.*

Under the assessment law of 1899 the State Board of Equaliza-
tion is composed of three members, a majority of whom is
made a quorum, and hence the presence and concurrence of
two members, at a regular meeting, are sufficient to render its
action valid, and the presence at such meeting of a third per-
son, as substitute for the absent member, does not vitiate the
action of the board, especially when it does not appear that
he exercised any control over the decision reached. (*Post, pp.
269–273.*)

Act construed: Acts 1899, Ch. 435.

Cases cited: Cowan *v.* Murch, 97 Tenn., 590; Austin *v.* Harbin, 95
Tenn., 600; Radford Trust Co. *v.* Memphis Lumber Co., 92
Tenn., 136.

6. SAME. *Same.*

Under the assessment law of 1899 the State Board of Equaliza-
tion is invested, not only with the power to equalize taxes
among the counties, civil districts, etc., but also with the
power to increase or decrease the valuations of the property

Carroll *v.* Alsup.

of individual taxpayers in order to equalize the distribution of the public burdens. (*Post, p. 274.*)

Act construed: Act 1899. Ch. 435.

7. SAME. *Same.*

The State Board of Equalization may, at its biennial sessions, without infringement of any constitutional right of the taxpayer, increase or decrease the valuation of his property, for the purpose of equalization, without giving him any notice other than that afforded by the following provision of the assessment law of 1899, to wit: ''Taxpayers and property owners, without further notice than this Act, are required to take notice of such biennial session. At this biennial session the assessment of the entire property of the State, and every taxpayer in it, is to be considered and passed upon, and the action of the board becomes, when taken, a finality.'' (*Post, pp. 274–282.*)

Act construed: Acts 1899, Ch. 435.

8. SAME. *Basis of valuations.*

The Constitution of 1870 requires property to be assessed for taxation at its actual cash value, and does not permit assessment at any per cent. of value below one hundred per cent. It requires equality and uniformity on the plane of actual cash value. '' The actual cash value is the only practicable basis upon which taxes can be made equal and uniform, and this is clearly the constitutional requirement, the legislative intent, and should be the effort of the Court as well as taxpayers.'' (*Post pp. 282–293.*)

Constitution construed: Art. II., Sec. 28.

Cases cited and approved: Brown *v.* Greer, 3 Head, 696; Chattanooga *v.* Railroad, 7 Lea, 569; State *v.* Butler, 11 Lea, 410; Railway *v.* Morrow, 87 Tenn., 415; Ellis *v.* Railroad, 8 Bax., 531; Jenkins *v.* Ewin, 8 Heis., 458.

Cited and distinguished: Reelfoot Lake *v.* Dawson, 97 Tenn., 160.

9. SAME. *Same.*

Beyond all controversy, the assessment law of 1899 fixes ''actual cash value '' as the basis of assessments to be made thereunder. It defines ''actual cash value '' as the amount of money the property would bring if sold at a fair, voluntary sale. (*Post, pp. 290, 291.*)

Act construed: Acts 1899, Ch. 435.)

Carroll *v.* Alsup.

10. SAME.  *Same.*

It is competent for the Legislature to prescribe in an assessment law any reasonable method or rule for the ascertainment of actual cash value.  (*Post, p. 290.*)

11. SAME.  *Taxpayer's remedy for disproportionate assessment.*

A taxpayer whose property has not been assessed at more than its actual cash value, as required by the Constitution and laws, cannot obtain any abatement of his assessment, except in very exceptional cases, by reason of the fact that other taxpayers have been assessed upon an inadequate valuation.  The legal remedy in such cases is to raise the inadequate assessments, not to lower those made according to law.  (*Post, pp. 290–293.*)

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.  F. H. HEISKELL, J.

T. B. TURLEY and K. D. McKELLAR for Carroll.

Attorney-General PICKLE for Alsup.

WILKES, J.  This is a bill to recover taxes paid the State and County under protest and to set aside an assessment of property for taxation.  The bill was demurred to; the demurrer was sustained, and the bill dismissed without any relief, and complainant has appealed and assigned errors.

The bill alleges, in substance, that complainant owns real estate in Shelby County for which he gave, at public sale, $12,200; which at that time

was its actual cash value; that prior to 1900 it was assessed for taxation at $13,000, which was in excess of its actual cash value and these taxes were paid without objection; that under Chapter 435, of the Acts of 1899, this property was asssessed at $12,000 or $13,000 and upon complainant's application to the County Board of Equalization this valuation was reduced to $10,000; that after this the assessment roll of the County of Shelby was transmitted, as the law requires, to the State Board of Equalization at the capital of the State to the end that the assessment of property in the several Counties of the State should be equalized. The bill charges that this State Board had jurisdiction to classify the assessments in the several Counties by wards and districts, or in such manner as the Board might deem best to enable it justly and equitably equalize assessments in conformity to the standard of the actual cash value of the property that appeared upon the assessment rolls of the several Counties of the State; that this Board was a quasi judicial tribunal composed of the Secretary of State, Comptroller, and Treasurer, and that they were vested by the Act with judicial functions and their jurisdiction limited and defined by the terms of the Act; that the statute provides that all persons shall take notice of the biennial sessions of the Board and does not provide for any other notice; that the law requires the duties of the Board to be performed by the Treasurer, Secretary of State, and

Carroll *v.* Alsup.

Comptroller, and that it is not in the power of either of said officers to appoint a substitute to act for and in his stead, but that the Treasurer of the State did appoint in his stead to act for and in his behalf a distinguished citizen of Tennessee whose capacity and integrity is admitted, the Hon. Newton H. White, the present Speaker of the Senate, and that at each and every session of the Board the said White attended and passed judgment upon each and every question coming before the Board, and that this was unauthorized and renders all proceedings by said Board illegal and void; that when the assessment roll was forwarded to the State Board, two members of the Board with said White considered the same, and the Comptroller and said White came to Memphis seeking information, as the Board was, by law, authorized to do, and thereafter the Board of Equalization convened in the capitol at Nashville and considered all the assessments of the properties in the County of Shelby and took action thereon, increasing some assessments, *but leaving the assessment of real estate untouched,* and after making corrections and changes and proper certificates, they certified their action to the Clerk of the County Court of Shelby County to enable him to make proper entries on the tax books to be turned over to the County Trustee of the County of Shelby.

The bill further alleges that thereafter the State Board recalled the record so certified, and had the same returned to it at Nashville, and that such

action, on the motion of the Board or some of its members, was unwarranted and unauthorized, and beyond the jurisdiction of the Board; that the assessment on complainant's property, without notice to him, was raised from $10,000 to $10,500, without authority or jurisdiction, and that the provision of the Act, allowing such changes and increase in valuation without notice to the owner, and making such action final, is unconstitutional and void, and not due process of law, and is repugnant to the Constitution of the United States and the State of Tennessee.

The bill further avers that it was not competent for the State Board, after having taken action, and leaving untouched the real estate in Shelby County, and certifying the roll to the Clerk of the County Court, to take any other or further action, except upon such proceeding by a taxpayer in the form of a verified petition, asking for a revision of the quasi judicial action of the members of the Board in making an erroneous assessment of his property, and seeking a rehearing of its judgment; that the roll became a finality when acted upon by the Board and returned to the County Court Clerk, and could not be changed on mere motion of the Board, without notice to the taxpayer.

The allegations of the bill in regard to values are, in substance, these: That property specified in Section 22 of the Act is assessed at forty per cent. of its value; that real estate is assessed at

from seventy to eighty per cent. of its value; that the property specified in Section 28 is assessed at forty per cent., and that railroad property is assessed by the Railroad Commissioners at sixty per cent. of its value, and that he is entitled to an assessment of his property on an equal and uniform basis with other property; that $7,200, or sixty per cent. of the cash value of his property, would put it on such equal and uniform basis and parity with other property in Shelby County and in the State, and that he tendered taxes on this basis, which the Trustee declined to receive. He then tendered taxes upon the property at a valuation of $10,000, which was the valuation fixed by the County Board of Equalization, which was also refused, and he thereupon paid, under protest, upon a valuation of $10,500, the amount fixed by the State Board of Equalization, and brought this suit.

It will then be seen that the complainant in this bill treats $12,000 as the actual cash value of his property, which was assessed at $10,500 by the State Board of Equalization, or not quite 90 per cent. of its actual cash value. He states that at public sale he gave for this property $12,200 and that was the actual cash value of it when he bought it. The bill further alleges that upon this assessment the city of Memphis will collect taxes for 1901 and 1902, and defendant Alsup is *ex-officio* collector of these taxes and will proceed to collec-upon this assessment. It further charges that the

Act is unconstitutional in that it embraces two separate subjects and they are not expressed in the caption; that is by Sections 22 and 23 shares of stock in quasi public and industrial corporations are exempt from taxation, whereas the title and body of the Act is to provide revenue and for equal and unit form assessment of property for taxation.

The prayer is that the assessment of $10,500 be declared illegal and void because repugnant to Section 8, Article 11, of the Constitution and to Section 17 of Article 2, and that he have judgment for the taxes paid by him and that the assessment be cancelled and set aside and that he have such other and further relief as may be equitable and proper under the facts general and special.

The demurrer is in substance:

1. That the complainant having by this bill shown that his property is assessed at less than its actual cash value, has no status, and cannot complain of the assessment merely because other property of other owners is assessed at a still lower valuation.

2. That the notice provided by the statute is all the notice to which the complainant or any other property owner is entitled.

3. That the State Board had the jurisdiction to raise the assessment of real estate as it did, and to consider and pass upon the tax assessment for Shelby County as it did.

4. That the bill shows that when the action of the State Board was had it was acquiesced in and

done by the Board, and even if done by a majority of the Board, the presence and action of the Hon. Newton H. White, a private citizen, did not and could not invalidate the action of the Board or a majority.

5. That the Act does not embrace two subjects, but only one general · subject, and the provision complained of is one prescribing a mode of making an equal and uniform assessment; and the Act is not, therefore, unconstitutional and void.

The decree of the Chancellor recites that the several assignments of demurrer are well taken.

The first assignment of error is in substance that the Act in controversy, being Chapter 435 of the Acts of 1899, is repugnant to Section 17, Article 2 of the Constitution of the State, in that it embraces two separate and distinct subjects, to wit, (1) the assessment and collection of revenue, and (2) the exemption of a certain class of property from taxation.

The title of the Act is: "An Act · to provide more just and equitable laws for the assessment and collection of revenue for State, county, and municipal purposes, and to repeal all laws in conflict with the provisions of this Act, whereby revenue is collected from the assessment of real estate, property, privileges, and polls." In support of this assignment are cited the following cases: *State* v. *McCann*, 4 Lea, 1; *Murphy* v. *State*, 9 Lea, 373; *Mayor* v. *Lewis*, 12 Lea, 180; *Ragio* v. *State*, 86

Tenn., 273; *Hyman* v. *State*, 87 Tenn., 109; *Bank* v. *Devine Gro. Co.*, 97 Tenn., 604; *Kennedy* v. *Montgomery Co.*, 98 Tenn., 165.

Without commenting upon these cases, we are of opinion that the present Act does not embrace two separate and distinct subjects, but only the general and broad subject of the just and equitable assessment and collection of State, county, and municipal taxes; that this broad subject, expressed in the title, covers all the provisions of the Act, including the manner of assessing property of corporations, and the matters complained of as exemptions are, in fact, only different methods of taxing the property of different corporations.. *State* v. *Brown*, 103 Tenn., 450; *State* v. *Yardly*, 95 Tenn., 546.

Closely connected with the first assignment is the second one, which is, in substance, that the Act violates that provision of the Constitution which prohibits special and class legislation. Coupled with this, also, is the third assignment, that the Legislature had no power to exempt shares of stock in quasi public and manufacturing corporations from taxation while it taxes the shares in other corporations; and that this Act makes such exemptions, and that the provisions relating thereto are so interwoven and interdependent on other provisions as to render the whole Act void.

We are of opinion that these assignments are not well made. What is called in the bill and brief of counsel an exemption of the shares of stock of

quasi public and manufacturing corporations is not, in fact, an exemption, but only a different mode of assessment, rendered necessary by the different characters of the corporations to be taxed. While the shares of stockholders in such quasi public and manufacturing corporations are not taxed, the corporate property of such corporations is taxed, including their franchises, easements, incorporal rights and privileges, and all other corporate property, at its actual cash value, which, it is provided, shall not be less than the actual cash value of both its shares of stock and bonded debt, and this shall be in lieu of the assessment and taxation of the shares of stock either to the corporation or the stockholders; provision is then made for the taxation of the real estate and tangible personalty, and other specific directions follow as to the manner in which the assessment shall be made and the taxation shall be laid. Secs. 22 and 23, Acts of 1899, p. 1098 to 1103.

It has been found necessary to provide different modes for the assessment and taxation of different classes of property belonging to different kinds of corporations, and even different kinds of property belonging to individuals, and such instances of difference in modes is frequently met with. Thus railroads, which do not pay an *ad valorem* tax, are required by law to pay a privilege tax. *Railroad* v. *Harris*, 15 Pickle, 684. Banks are taxed differently to avoid the exemptions contained in their charters.

Carroll *v.* Alsup.

*Bank* v. *Memphis*, 17 Pickle, 154. And many other similar illustrations could be given.

It is said that after the State Board had once considered the Shelby County assessment and certified its conclusions to the Clerk of the County Court, its power and jurisdiction was exhausted, especially in the absence of notice to property owners.

As we understand the allegations of the bill they are that the State Board, upon their first consideration of assessments of Shelby County property, *left the assessments of real estate untouched*, and this, we think, means that the assessments were not considered, so far as real estate was concerned, and, while the action of the Board in returning the roll before their work was entirely completed, may have been irregular, still we cannot see that the Board exhausted its power until after it had fully acted upon the assessment of real estate as well as other property, and we think the reasonable inference is that their action was a mere matter of convenience, and not intended as a finality and conclusion of their labors during their sitting, the assessment was entirely under their control so long as it was desired by them to complete their labors and discharge their duties relating to it.

It is next insisted that the entire action of the Board is illegal and void because of the presence of the Hon. Newton H. White upon the Board as a substitute for and in lieu of the State Treasurer, the Hon. E. B. Craig. The allegations of the bill

are somewhat indefinite as to this feature of the case, and, perhaps, do not fairly raise the question intended to be presented.

No imputation is made against the capacity and integrity of Mr. White. These are expressly conceded by the bill. It is alleged that he was appointed by the Treasurer to act in his stead, and that he attended each and every session of the Board, and passed judgment on each and every question coming before the Board and also that he visited the city of Memphis with the Comptroller seeking information. The bill does not allege that he was present and participated in the consideration of the Shelby County assessment nor that the Treasurer was not present at the time it was made; on the contrary, if taken literally, the language would imply that the Treasurer was present and that Mr. White was not, as the bill states that the Board of Equalization convened at Nashville and considered of the assessments and took action thereon without specifically stating that Mr. White was present and that Mr. Craig was not, on that particular occasion. But treating the bill as alleging as was probably intended that Mr. White was present and Mr. Craig was not, the question recurs, does this render the action of the Board, or a majority of the Board, void?

There is no allegation that a quorum of the properly constituted Board did not act, nor indeed that those who acted did not do so unanimously.

The question of · the legality and validity of the action of · a majority of a Board or of a Court was fully considered in the case of *Cowan* v. *Murch*, 13 Pickle 590, and the authorities are there cited and commented upon.

The rules there laid down are, that when power is delegated to two or more persons for a mere private purpose in no respect affecting the public, it is necessary that all should join in the execution of it, thus arbitrators must all join in an award, but in matters of public concern if all are present, the majority may act for the whole, citing *McCoy* v. *Curtice*, 9 Wend., 17 (S. C. 24 Am. Dec., 115 and note); *Cooley* v. *O'Conner*, 79 U. S. Report, 396; *Croker* v. *Crane*, 21 Wend., 211; *Ex Parte*, *Rogers*, 7 Cowen, 529 (S. C. 34 Am. Dec., 235 and note); *Bank* v. *Mount Taber*, 52 Ver., 87 (S. C. 36 Am. Report, 734), and other cases.

. A more explicit statement of the rule is: that generally when a body or board of officers is constituted by law to perform a trust for the public, or execute a power or perform a duty prescribed by law, it is not necessary that all should concur in the act done—the act of the majority is the act of the body. 19 Am. & Eng. Ency. (1st Ed.), 465, and note.

Some cases hold that all must confer, but if all have notice of the time and place of meeting it is no objection that · all do not attend if there be a quorum, and the presence of all will be presumed.

unless the contrary appears. If the statute conferring the power requires the presence of all, then all must be present. 19 Am. & Eng. Ency. Law (1st Ed.), 466, and note.

But the same rule does not apply in cases of officers exercising judicial functions. In such cases a majority may act. *Radford Trust Co.* v. *Memphis Lum. Co.*, 8 Pickle, 136; *Austin* v. *Harbin*, 11 Pickle, 600; *Cowan* v. *Murch*, 13 Pickle, 590.

The cases which hold that all must act, and a majority cannot, so far as we can ascertain relate to matters of private interest, or where the statute or acts delegating the authority does not expressly provide that the act of the majority shall be sufficient; we have been cited to no authority which holds that all must join when the statute prescribes that a majority may act, and in such case the statute controls and a majority may act, and this has been held to apply to Boards of Equalization. *Cooley* v. *O'Conner*, 12, Wall, U. S., 396; *People* v. *Lothiop*, 3 Colo., 428; *Conner* v. *Waxahatchie*, 13 S. W., Rep., 30; *Ferriss* v. *Kenble*, 75 Texas, 476; *Hamilton* v. *State*, 3 Ind., 452; 25 Am. & Eng. Enc. L. (1st Ed.), 247.

If the office and duty of the Board be considered as ministerial instead of judicial or quasi judicial, then a majority may without question act and the authority of any one may be delegated. 19 Am. & Eng. Enc. L., (1st Ed.), 462 and note.

Our statute, Shannon, Sec. 69, provides that "all

words giving a joint authority to three or more persons or officers gives such authority to a majority of such persons or officers unless it is otherwise declared."

It is held in *Cowan* v. *Murch*, 13 Pickle, 590, that while this section by its terms and context is applicable alone to the Code and the body of laws embraced in it; it should be considered in the construction of all subsequent statutes so as to build up a uniform and harmonious system.

But any doubt on the right of the majority to act in this case is put at rest by the first subsection of Section 39 of the Act in question, which provides that a majority of the Board shall constitute a quorum for the transaction of business. It is said, however, that even if it be true that a majority may act, the statute does not authorize joint action with a third person, no matter who he may be. But we cannot see how this can affect the action of the majority, if it be true. They would have the right to call to their aid the services of any competent citizen as advisory, and his counsel and act would not vitiate the conclusion of the majority. It will be noted, however, that there is no express charge that Mr. White took any part in raising the assessment, but the inference from the language used is that he did not. There is no allegation that it was done on his advice or suggestion, or that he signed the assessment as made.

23 P—18

The eighth assignment of error raises two questions, or rather a question in a double aspect, and may be thus stated, that it was not the intention of the General Assembly to confer power upon the State Board of Equalizers to increase or decrease the valuation of the property of individual taxpayers, but merely to equalize assessments as between the several counties in the State, so that the property in the several counties should be placed on the same basis.

So far as this feature of the assessment goes, we think it not well taken, for the act clearly contemplates and provides that the Board shall have the power to pass upon and consider individual assessments, and increase or decrease them as in its judgment may appear right and proper. This appears from many sections and provisions of the act which we need not mention.

It is said that, conceding this to be true, the Act must be held to be unconstitutional and void because it wholly fails to provide for notice to the property owner to be affected by the act of the Board and give him an opportunity of being heard, before the Board passes upon the value of his property as a finality, and thus the taxpayer is encumbered with a burden and his property taken without due process of law, contrary to the Constitution.

The Act provides for a biennial session of the Board to be holden the second Monday in July and

Carroll *v.* Alsup.

continue until the 15th of September following, and the only provision for notice is as follows: "Taxpayers and property owners without further notice than this Act, are required to take notice of such biennial session. At this biennial session the assessment of the entire property of the State and every taxpayer in it is to be considered and passed upon, and the action of the Board becomes, when taken, a finality."

The only express provision we find in the Act for hearing complainants of the individual taxpayer is contained in the sixth subsection of Section 39, and that pertains only to persons who desire to complain that their neighbors or third persons have not been adequately assessed.

Therefore if the Board shall find the property of any county, district, ward, or citizen in any County in the State in their opinion not adequately assessed, it may, without further notice than the Act itself provides, proceed to raise such property to such assessment as in its judgment reaches its actual cash value.

When the Board undertakes to fix this actual value, the property owner, under the Act, is not notified to appear, and this is true whether the assessment is that of a county, district, individual, or corporation.

The taxpayer knows that the Board is in session, it is true, for the act so notifies him, but he does not know when it will consider the assessment nor

whether it will attempt to make any change in it. The argument is that granting that he might have the privilege of attending all the meetings of the Board and listening to all their deliberations he might by remaining with the Board for the two and a half months it is in actual session, obtain actual notice that the Board did or did not raise his assessment, but this is the only way he could have such notice as the Board is under no express requirement of law to notify him whether his property will be raised, nor indeed at what time its valuation will be considered, literally the act prescribes that all property owners shall by the act itself have notice of the biennial meetings of the the Board, but it does not provide that by the act itself each taxpayer shall have notice of all that transpires in the Board, nor of anything that directly touches or affects his property.

It is said that it would be impracticable to give each taxpayer notice; that the number to be investigated and the space of time in which they are to be considered is too great to allow notice in each case. The argument is pressed to the conclusion that to hold the general notice provided by the act to be sufficient to warn each property owner in the State to be on the alert to see that his assessment which has passed the scrutiny and action of the assessor and County Board, may be increased, nevertheless, by the State Board, and that he must take notice thereof without further notification than the

provisions of the act itself, is virtually to say that each and every taxpayer in the State must at his peril attend the meetings of the Board at Nashville for the entire time of two and a half months the Board is in session, in order that each may see that no change in his assessment is made.

Numerous cases are cited as sustaining the contention that notice must be given and that a general notice, such as provided by the present Act, is not sufficient, but some notice must be provided by the Act itself to be given to each individual taxpayer or property owner, and in the absence of any provision for such notice in the Act the Act itself would be unconstitutional and void, because it would impose a tax burden and thus take away the properey of the owner without due process of law; and this is undoubtedly the holding of some States and authorities. We cite a number of these, and, no doubt, others can be collated. *Kuntz* v. *Sumption*, 2 L. R. A., 655, a case from Indiana; *Hager* v. *Reclamation Dist.*, 111 U. S., 701; *Sioux City* v. *Washington Co.*, 3 Neb., 30; *South Platte Land Co.* v. *Buffalo Co.*, 7 Neb., 253.; *McGee* v. *The State*, 49 N. W. Rep., 220; *Patton* v. *Green*, 13 Cal., 325.

Other authorities hold a different view, and we are satisfied from them and reason that the notice prescribed by the statute is sufficient to warrant the action of the Board. Indeed, it is difficult to see how any other notice could be so effectual or suit-

able.   The primary function of the Board is to equalize assessments as between counties, so that assessments may be uniform and equal throughout the State.    If the Board finds it necessary to raise an assessment on any county, it is difficult to see what other, better or further notice could be required or given than that prescribed by the act.    There is no individual to whom such notice could be directed as representing the county, and why an individual should have notice of a change in his assessment, when no notice is required to be given to the body of taxpayers in the county, it is difficult to see. It must be conceded that tax proceedings, and especially assessments, are *sui generis* and do not require that strictness as in controversies between individuals, and the authorities hold that notice given in the act itself is sufficient.    Cooley on Taxation, p. 364–52 (2d Ed.); 1 Desty on Taxation, p. 599–602; State Railroad Tax Cases, 92 U. S., 575–609; Kentucky Railroad Tax Cases, 115 U. S., 321; *St. L. I. M. & S. R. R.* v. *Northern*, 7 L. R. A., 374; *C. C. C. & St. L. R. R.* v. *Backus*, 18 L. R. A., 729; 25 Am. & Eng. Enc. Law, 254 and notes. When authorities *pro* and *con.* are collated, 25 Am. & Eng. Enc. Law, 547, note 1.

In Cooley on Taxation (2d E.), p. 364–5, it is said, of the meeting of the Court or Board, the taxpayer must in some manner be informed, either by personal notice or by some general notice which is reasonably certain to reach him, or what is equiva-

lent, by some general law which fixes a time and place of meeting, and of which he must take notice. The last is a common method of bringing the assessments to the notice of taxpayers, and it is, perhaps, the best of all, because it comes to be generally understood and is remembered. See, also, *Meth. Church* v. *Baltimore*, 6 Gill., 391; *O'Neil* v. *Bridge Co.*, 18 Maryland, 26; *State* v. *Remyor*, 41 N. J., 96; *County of Santa Clara* v. *So. Pac. R. R.*, 18 Fed. Rep., 410.

In the note to *Read* v. *Dingess*, 8 C. C. A. Rep., 401, is found an excellent statement of law involved in these words: "It being conceded that notice of a meeting of the Board of Equalization is necessary in order to invest their proceedings with the character of due process of law, it is next to be seen whether this notice must be actual personal notice to each individual whose assessment is to be affected, or whether it may be public or general.

"In some of the States it is held that although the fixing by the statute of a time and place for the meeting of the Board of Equalization is intended to operate as general notice to any persons who may feel aggrieved; yet the Board cannot at any time increase and assess valuation without actual notice to the persons whose rights or interests are to be affected thereby. Citing *Sioux City & P. R. R.* v. *Washington Co.*, 3 Neb., 30; *South Platte Land Co.* v. *Buffalo Co.*, 7 Neb., 253; *McGee* v.

Carroll *v.* Alsup.

*The State*, Neb., 49 N. W. Rep., 220; *Patten* v. *Green*, 13 Cal., 325.

"But the great preponderance of authority is to the effect that if a public statute, of which all persons are bound to take notice, specifies the day and place when the Board of Equalization shall meet, a ·person affected by its action cannot complain that such action was taken without notice to him. *Santa Clara Co.* v. *Sou. Pa. R. R. Co.*, 18 Fed. Rep., 385 ; *Methodist Church* v. ·*Mayor of Baltimore*, 6 Gill., 391; *O'Neil* v. *Bridge Co.*, 18 Maryland, 26; *State* v. *Runyon*, 41 N. J. Law, 98; *Nixon* v. *Ruple*, 30 N. J. Law, 58; *St. Louis & I. M. R. R.* v. *Worthin*, 52 Ark., 529; *Hambleton* v. *Dempsey*, 20 Ohio St., 168; *State* v. *New Lindel Hotel Co.*, 9 Mo. App., 450.

"And on the same principle a published general notice of the meeting of the Board of Equalization is sufficient to give authority to act upon individual assessments. *Lamb* v. *Connoly*, 25 N. E., 1042 ; *Terrel* v. *Wheeler*, 25 N. E., 329 (123 N. Y., 76); *Fithian* v. *Wheeler*, .26 N. E., 141 (125 N. Y., 696)."

In 1 Desty on Taxation, p. 601, it is said: "The proceedings being judicial, the law must provide some kind of notice and opportunity to be heard before the proceedings become final, or they want the essential ingredients of due process of law. It may be given by personal citation or by statute. It is usually given by statute prescribing a time and place when parties may be heard;" and again, p.

Carroll *v.* Alsup.

602: "It is in the power of the Legislature to determine what shall be sufficient to bring the parties into Court in tax proceedings."

In the State Railroad Tax Cases, 92 U. S., 609, it is said: "The main function of the Board is to equalize assessments over the whole State. If they find that a county has had its property assessed too high in reference to the general standing, they may reduce the valuation; if it has been fixed too low, they may raise it to that standard. When they raise it in any county, they necessarily raise it on every individual who owns any property in that county. Must each one of these have notice and a separate hearing? If a railroad company is by law entitled to such notice, surely every individual is equally entitled to it. Yet, if this be so, the expense of giving notice, the delay of hearing each individual, would render the exercise of the main function of the Board impossible. The very moment you come to apply to the individual the right claimed in this case by the corporation, its absurdity is apparent. Nor is there any hardship in the matter. The Board has its time of sitting fixed by law. Its sessions are not secret. No obstructions exist to the appearance of any one before it to assert a right or redress a wrong, and in the business of assessing taxes, this is all that can be reasonably asked."

In the case of *Santa Clara Co.* v. *Sou. Pa. R. R.*, 18 Fed. Rep., 411, it is said: "The notice

Carroll *v.* Alsup.

. . . need not be a personal citation. It is sufficient if it be given by law, designating the time and place where parties may contest the justice of the valuation. As a general rule, only a statutory notice is given. The State may designate the kind of notice and the manner in which it shall be given.''

All that we assert or have asserted is that there must be a notice of some kind which will call the attention of the parties to the subject and inform them where and when they will be permitted to expose any alleged wrong. in the valuation of which they may complain.

But the Court is forced to the same conclusion upon another point, and that is that complainant does not occupy such a status as that he is entitled to any relief or that his complaint can be heard. The provision of the Constitution in regard to taxation, necessary to be considered in this case, is: ''All property shall . be taxed according to its value, that value is to be ascertained in such manner as the Legislature shall direct, so that taxes shall be equal and uniform throughout the State.'' Cons., Art. 2, Sec. 28.

Section 4 of the Act of 1899, under which this assessment is made, directs that all property shall be assessed at its *actual cash value*, and actual cash value is there defined as the amount of money the property would bring if sold at a fair voluntary sale.

We do not stop to inquire whether the Legislature might adopt a different basis for estimating

value. It is sufficient to say that it has adopted this basis, and this is made prominent in every section of the Act that refers in any way to the valuation of property.

There are, then, two fundamental principles to be taken as guides in assessing property under our Constitution and laws: (1) That all property shall be assessed at its actual cash value; and (2) that taxes shall be equal and uniform. The latter proposition flows naturally and inevitably as a corrolary to the former, for, when all property is assessed at its actual cash value, then all taxes become equal and uniform. However difficult it may be to arrive at the first result, it is imperatively demanded by the Constitution and laws, and the second unavoidably and from necessity follows it, and to adopt a cash valuation is the only basis upon which it is practicable to make taxes equal and uniform.

It is said that Subsection 6 of Section 39 of the Act in controversy recognizes the doctrine of proportionate rating, and that a taxpayer is entitled to relief if his property is assessed at a higher percentage of value than other like property owned by other taxpayers, even though it is not assessed at its full cash value. That section provides that the State Board of Equalization may hear a complaint from any taxpayer, made on the ground that other property than his own has been assessed at less than its actual cash value, or at a less percentage of value than his own; but this appears to be made

of equalizing the property of the complaining owner, not by the lowering his assessment, but by raising that of other persons who have not been adequately assessed.

It is the evident policy and object of the law, in cases of unequal assessments, not to reduce the assessments upon the property unless it has been assessed beyond its actual value, but, instead, to raise up to that valuation all property that has been inadequately assessed, and thus to equalize taxation on all property. The recourse offered to the taxpayer is not to reduce his own assessment, unless it is beyond its actual cash value, but to have that of his neighbor increased until both reach the point of actual cash value and thus become equal and uniform, as the law provides and the Constitution contemplates. This idea is manifested in many provisions of the statute not necessary to be specifically pointed out. It may be found in every section that refers to value. The question then recurs, Can a taxpayer, who confesses that his property has not been taxed at its actual cash value, complain of his own assessment because other property owners have been inadequately assessed? Upon this feature of the case, which is determinative of this case, there is a conflict of authority. Much of this conflict is more apparent than real, and arises out of the differences in statutory and constitutional provisions in regard to assessments and taxation of

Carroll *v.* Alsup.

property in different States. Sec 25 Am. & Eng. Enc. Law, 225, note 4.

The case of *Wagoner* v. *Loomis*, 37 Ohio St., 571, is a well considered case and very much in point. It is said in that case: "That the statutes of Ohio require all property to be taxed at its true value in money, and the equality required by the Constitution has no other test." . . . . . . . . . Again: "Where, then, lies the equity of this case? While it cannot be said that the plaintiffs below should be compelled to pay more taxes in proportion to the value of their property than is required of other taxpayers of the county, it must be affirmed that other taxpayers should pay as much as is required of the plaintiff in proportion to the value of their respective properties, and that is to say until all have paid the required rate upon the full and true value of their respective properties. And if for such reasons (disproportionate assessments at less than their value), relief can be given to plaintiff, we see no reason why the like relief may not be given every taxpayer in the State whose property has been assessed at more than forty per centum of its true value, even to the destruction of the revenues of the State."

This case distinguishes between instances where the overvaluation arises from a mere estimate or opinion and one where it is the result of fraud, conspiracy, or a combination or design to fix on one class of property heavier taxes than upon another,

and the case is differentiated upon these features from the cases of *Pelton* v. *The Bank*, 101 U. S., 143; *Cummings* v. *The Bank*, 103 U. S., 153.

The Constitution of Ohio requires an assessment upon a basis of true value and equality at the same time, as does the Constitution of Tennessee. This case is referred to and commented on in *Bank* v. *Lucan County*, 25 Fed. Rep., 750, in this language: "I understand that the Supreme Court of Ohio decided that, inasmuch as the Constitution and laws of the State provide for equality of taxation, by requiring all property, whatever it be, assessed for taxation at its true value in money, any citizen whose property is assessed below that value has no just cause of complaint because the property of other citizens is assessed at less than his own, and his only remedy is to apply to the assessing officers to increase all assessments to their true value in money."

This is the Constitutional test of equality, and even where there is a fraudulent conspiracy to discriminate against a citizen, or a class of citizens, there is no relief unless it can be shown that the burden imposed is greater than it would have been if all assessments had been made at their true value in money. See, also, *Louisville R. R. Co.* v. *Commonwealth Ky.*, 49 S. W. Rep., 466.

We do not intend to be understood as going to the extent of holding an assessment conclusive in case of collusion and conspiracy to fix upon one

species of property an over or under valuation, for such feature is not presented or charged in this case, but in such cases we prefer the rule announced by Chief Justice Waite in *Cummings* v. *Bank*, 103 U. S., 153, that fraud, conspiracy and collusion will open up the assessment to complaint. *Taylor* v. *L. & N. R. R. Co.*, 88 Fed. Rep., 350; *Walter* v. *Chamberline*, 60 Fed. Rep., 788; *Lowell* v. *Commissioners*, 152 Mass., 372.

In accord with our view are many cases and authorities.     25 Am. & Eng. Enc. Law, 65, and Note S.

In *Pacific Hotel Co.* v. *Lib.*, 83 Ill., 684, it is said in substance: "If it appears that an assessment is not greater than the taxpayer could be called on to pay, it is immaterial." In a similar case it was refused to set aside the assessment by *certiorari* or to restrain the collection by injunction. *State* v. *Morris*, 48 N. J. Law, 99; *Union Pac. R. R.* v. *Lincoln Co.*, 21 Dill., 279.

The remedy offered the taxpayer in such cases is to have his neighbor's assessment raised to its proper basis.     25 Am. & Eng. Enc. Law, 451.     See, also, Perry's Petition, 16 N. H., 43; *Edes* v. *Boardman*, 58 N. H., 586.

We are not unmindful that there are some authorities holding a contrary doctrine, and we are referred especially to the Tennessee Railroad cases, 26 Fed. Rep., 168; and, *Taylor* v. *L. & N. R. R. Co.*, 88 Fed Rep., 350; *Merc. Nat. Bank* v. *Hub-*

*bard*, 105 Fed. Rep., 509; as in conflict with our holding; but the cases referred to as arising under the statutes of Tennessee were cases construing a different act from the one now under consideration, and it is a part of our legislative and judicial history that the language of the Act of 1899 was designed to meet the holding of the Court in these cases.

In the case of *Taylor* v. *The Railroad*, 88 Fed. Rep., 350, the Circuit Judge of the United States recognized the doctrine of proportionate valuations. Whether this holding was correct or not, under the statute as it then stood, we do not stop to consider. It is apparent that the Act of 1899 intended to do away with this view by providing for a valuation upon a cash basis alone, and this is made so prominent in the various sections of the Act that no room is left for any question as to the legislative intent. In the Taylor case the Court found itself confronted, as it says, by a serious dilemma, to wit, that the Constitution required assessments to be made upon the true cash value, and, at the same time, to be equal and uniform. But the Court found that, while the State and County Assessors had systematically, and by what amounted to a preconcert of action, disregarded the law and assessed property upon a percentage of value, the Railroad Assessors had attempted to comply with the law by assessing at actual value. The result was that railroad property was assessed upon a higher basis than other property, and taxes were not made equal and

uniform. In this dilemma the Court confessedly departed from the law in order to secure uniformity between the different classes of property, basing its decision partly upon the case of *Cummings* v. *The Bank*, 111 U. S., 153, decided by the Supreme Court of the United States, and *Reelfoot Lake* v. *Dawson*, 97 Tenn., 160. We will not stop to comment on these cases further than to say that the doctrine of assessment and taxation upon a percentage of value instead of true value or actual cash value finds no warrant in the language used in the Reelfoot Lake case. The only expression used in that case that can be considered to hold such a doctrine is the following: "*This means that every property tax shall be graduated by the value of the property on which it is laid.*"

This expression is used in pointing out the difference in the mode of assessing real estate under the Constitution of 1796, and the subsequent constitutions of 1834 and 1870, the former assessing taxes by the lot or tract, and the latter by value, and not by the tract, and the clear meaning of the expression used is that every property tax shall be determined by the value of the property and not by the tract. But it by no means warrants the idea that a percentage of value may be made the basis of assessment, but, on the contrary, the "*actual value,*" or "*true value,*" or "*cash value,*" the expressions being synonymous, are made the basis by which the tax or value must be graduated or

determined. The entire paragraph from which the expression is taken is this: "Under the Constitution of 1796, lands were taxed by the hundred acres, but the Constitution of 1834, like that of 1870, contained a provision that all property shall be taxed according to its value. This means that every property tax should be graduated by the value of the property on which it is laid," citing cases.

It was evidently the purpose of the General Assembly, in the Act of 1899, to escape the percentage valuation idea as to any and every kind of taxable property, and fix upon the actual cash value as the basis upon which all assessments should be made so as to meet both requirements of the Constitution, the assessment of property at its value, and at the same time taxation should be equal and uniform. The Constitution of 1870, Art. 2, Sec. 28, directs that all property shall be taxed according to value, that value to be ascertained in such manner as the Legislature may direct, so that taxes shall be equal and uniform throughout the State, and so that no species of property from which a tax may be collected shall be taxed heavier than any other species of property of the same value. The Legislature of 1899, by the Act under which this assessment was made, directed the manner in which the actual cash value should be ascertained, and this, under the Constitution, it had the power to do, and did do, and its action and mode is final and conclusive. The impracticability of adopting any other than the actual cash value as

Carroll *v.* Alsup.

the basis of equalization forcibly appears in the present case. Complainant's property, according to his bill, is assessed at ninety *per centum* of its actual value, and another class of property is assessed at seventy-five; another at sixty, another at forty. The average is said to be sixty. Now, to what percentage shall complainant be reduced? He has as much right to a forty *per centum* valuation as to one at sixty and seventy-five *per centum* and so has every other property owner in Shelby County. Again, it is evident that, if complainant could obtain relief under his present bill, it would still leave his property liable to be back-assessed, under our statute, for three years. Indeed, upon the concession made in this bill, if complainant's property is not assessed at its actual cash value, it would become at once the duty of the Comptrollor to cause it to be back-assessed at its actual value, so that under our system there is but one basis upon which values can be made finally to rest, and that is the actual cash value, and until that is reached no property is free from the machinery of the law designed to place it on that basis. It is well to note, also, that complainant in this case only compares his property with other property around him, and not with other property in other localities of the State. We have, therefore, in the present case a property owner who confesses that his property is assessed at less than its actual value, complaining because, in his opinion, his neighbor's property is assessed at a still

lower valuation.    It is no ground for relief to him, nor can any taxpayer be heard to complain of his assessment when it is below the actual cash valuation of the property, on the grounds that his neighbor's property is assessed at a less percentage of its true or actual value than his own.    When he comes into Court asking relief of his own assessment he must be able to allege and show that his property is assessed at more than its actual cash value.    He may come before an Equalizing Board, or, perhaps, before the Courts, and show that his neighbor's property is assessed at less than its actual cash value and ask to have it raised to his own, if his is at the cash value, and in this way the Courts, Legislatures and taxpayers will co-operate to tax all property at its actual cash value and to make all taxes equal and uniform, as the Constitution contemplates.    *The actual cash value is the only practicable basis upon which taxes can be made equal and uniform, and this is clearly the constitutional requirement, the legislative intent, and should be the effort of the Court as well as taxpayers.*    While valuations may in this way be increased, it will result in no no hardship, as the rate of taxation will be proportionately lowered and yet produce the same revenue; and when this rule is applied to all property of every class and character, whether corporate or individual, there will be no hardship, and the soundest public policy will be subserved and the only rational and feasible basis for assessment will be reached.

Carroll *v.* Alsup.

This, we understand, has been the uniform ruling of this Court. *Brown* v. *Greer*, 3 Head, 696; *Chattanooga* v. *Railroad*, 7 Lea, 569; *State* v. *Butler*, 11 Lea, 410; *Street Railway* v. *Morrow*, 87 Tenn., 415; *Ellis* v. *R. R. Co.*, 8 Bax., 531; *Jenkins* v. *Ewin*, 8 Heis., 458.

We are of opinion, for the reasons stated, that complainant is entitled to no relief, and the decree of the Court below dismissing his bill is affirmed with costs.

Chief Justice Snodgrass does not concur in this opinion and holding.