**WEST COAL CORPORATION,**
**Petitioner-Appellant,**

v.

**STATE BOARD OF EQUALIZATION;**
**Assessment Appeals Commission; Betty**
**Anderson; Virgil Burress; Angela Mor-**
**row; Harold Thompson, Scott County**
**Assessor of Property; C.J. Thompson,**
**Scott County Trustee; and Verda Cope,**
**Jr., Scott County Executive, Respon-**
**dents-Appellees.**

Court of Appeals of Tennessee,
Western Section, at Nashville.

Feb. 11, 1983.

Application for Permission to Appeal
Denied by Supreme Court
April 4, 1983.

Jerome Templeton, Knoxville, for petitioner-appellant.

Peter J. Alliman, III, Knoxville, for Anderson, Burress and Morrow.

Charles L. Lewis, Nashville, for State Bd. of Equalization and Assessment Appeals Com'n.

Thomas W. Phillips, Oneida, for H. Thompson, C. Thompson and Cope.

CRAWFORD, Judge.

This is an appeal by West Coal Company from the decree of the Chancery Court of Davidson County affirming the decision of the Assessment Appeals Commission of the State Board of Equalization which assessed West Coal's tangible personal property at $3,893,038.00.

This entire proceeding was occasioned by the failure of West Coal Company to file a schedule of tangible personal property as required by Tenn.Code Ann. § 67–620 (Cum.Sup.1982).[1] Under the statute, West Coal's failure to file the mandatory schedule necessitated a forced assessment by the county tax assessor in the amount of $760,-176.00. Three interested taxpayers of Scott County appealed this initial assessment of West Coal's property[2] to the Scott County Board of Equalization pursuant to Tenn. Code Ann. § 67–806(a)(3) (1976) (giving any owner of property liable for taxation the right to complain that property held by another taxpayer has been assessed at less than its full and true value). The decision of the Scott County Board of Equalization was subsequently appealed to the State Board of Equalization acting through the Assessment Appeals Commission. West Coal also appealed from the forced assessment to the Scott County Board of Equalization and then to the State Board of Equalization.

A hearing examiner for the state board affirmed and confirmed the valuation of the tax assessor, and both West Coal and

1. *Schedule of tangible personal property— Business, profession or manufacturing.*—All partnerships, corporations, other business associations not issuing stock, and individuals operating for profit as a business or profession, including manufacturers, except those whose property is entirely assessable by the state public service commission, shall be furnished by the assessor not later than the first of February of each year, a schedule requiring the taxpayer to list in detail all tangible personal property owned by the taxpayer and used or held for use in such business or profession, including but not limited to, furniture, fixtures, machinery and equipment, all raw materials, supplies, but excluding all finished goods in the hands of the manufacturer and the inventories of merchandise held for sale or exchange, such schedule to be approved by the director of the division of property assessments. It shall be the duty of the taxpayer to list fully such tangible personal property used, or held for use, in his business or profession on such schedule, including such other information relating thereto as may be required by the assessor, place its correct value thereon, sign same, and return it to the assessor prior to the first day of March of each year. In the event a taxpayer shall fail, refuse or neglect to complete, sign and file such schedule

with the assessor of property, as above provided, it shall be considered a misdemeanor and upon conviction, punishable by a fine of not less than fifty dollars ($50.00) nor more than five hundred dollars ($500.00), and the assessor shall assess the tangible personal property of the taxpayer which is used, or held for use, in his business or profession as aforesaid, and shall give the taxpayer notice of such assessment by U.S. mail, addressed to the last known address of the taxpayer, or his agent, at least five (5) calendar days before the local board of equalization commences its annual session. The remedy of a taxpayer against whom a forced assessment is made as above provided shall be the same as provided in § 67–806, but such remedy shall be conditioned upon the taxpayer filing with the board of equalization a complete listing or schedule of all the tangible personal property owned or used by him in the operation of his business on the same form as required to be filed with the assessor.

2. These taxpayers also appealed the Scott County Assessor's tax assessment of other coal companies, but only West Coal's assessment is involved in this appeal.

the original petitioners appealed from the recommendation of the hearing examiner. After a hearing, the Assessment Appeals Commission set the valuation of West Coal's tangible personal property at $3,893,-038.00, which action was affirmed by the court below.

This case is before the court under the provisions of the Uniform Administrative Procedure Act, Tenn.Code Ann. § 4–5–322 (Cum.Sup.1982) (formerly Tenn.Code Ann. § 4–5–117). West Coal has presented three issues for review, but we feel that the Chancellor concisely consolidated the issues into the one issue of whether the Commission acted illegally when it increased the valuation of West Coal's property even though it stated that the three citizens had not carried their burden of proof on the value of West Coal's property.

■ On appeal under the Administrative Procedure Act, Tenn.Code Ann. § 4–5–322, the court is directed to consider the entire record, including any part detracting from the evidence supporting the findings of the administrative body, but it is not to review issues of fact *de novo* and substitute its judgment for that of the agency as to the weight of the evidence. *Humana of Tennessee v. Tennessee Health Facilities Commission,* 551 S.W.2d 664 (Tenn.1977).

The proof before the Commission consisted of excise tax returns of West Coal and a list of various UCC–1 financing statements recorded in the office of the Secretary of State showing liens on various items of equipment securing an indebtedness totaling $4,860,222.00. Also introduced into evidence were reports by the State of Tennessee—Division of Mines indicating that inspections before and after January 1, 1978 (assessment date), revealed that various large items of equipment (several locomotives, mine cars, loaders, etc.) were on the premises of West Coal, creating an inference that they were present on the property on January 1, 1978.

With this evidence before it, the Commission, while commenting that "the appellants have not generally carried their burden of proof as to the value of appellee's tangible

personal property," held that the evidence was sufficient to establish that the assessable property was in the jurisdiction and that it was the *only* proof as to the property's value. As a result, the Commission increased West Coal's 1978 assessment, and West Coal appealed.

It is indeed significant that West Coal did not deny or otherwise attempt to dispute its ownership or the value of the property listed in the UCC–1 documents and the Division of Mines inspection reports. As we pointed out above, the entire controversy originated with West Coal's failure and refusal to comply with the law and file the required schedule of tangible personal property. Property of this nature is elusive and difficult to pin down without the honesty and cooperation of the owner and taxpayer. For that reason, the legislature authorized the tax assessor to make a forced or arbitrary assessment if the taxpayer failed to comply with the law. The legislature went further, however, and furnished a protection to a taxpayer who has failed to file a schedule—as West Coal failed to do in this case—by specifically providing that "the remedy of a taxpayer against whom a forced assessment is made as above provided shall be the same as provided in § 67–806, but such remedy shall be *conditioned* upon the taxpayer filing with the Board of Equalization a complete listing or schedule of all the tangible personal property owned or used by him in operation of his business on the same form as required to be filed with the assessor." Tenn.Code Ann. § 67–620 (emphasis added). Thus, in order to obtain relief from a disputed assessment, it is evident that the taxpayer must file the schedule called for by the statute.

■ West Coal complains that although the Commission found that the interested taxpayers did not carry "their" burden of proof, it nevertheless increased the assessment. While the Commission used the words "burden of proof," it is evident that the Commission was acting on substantial and material evidence in the form of the UCC–1 statements and the Division of Mines reports. When we consider whether

or not there is substantial or material evidence, we must do so in the context of the type of proceeding involved. As stated in *Carroll v. Alsup,* 107 Tenn. 257, 278, 64 S.W. 193 (1901): "It must be conceded that tax proceedings, and especially assessments, are *sui generis* and do not require that strictness as in controversies between individuals ..."

 It certainly is not unreasonable to require a taxpayer to file a schedule of property or risk an arbitrary assessment, nor is it unreasonable to require as a condition to appeal that he file the schedule he should have filed in the first place. By the same token, it is not unreasonable for the Board of Equalization, through the Assessment Appeals Commission, to require that a taxpayer list his property or that he establish, in some manner, what property he owns which is subject to assessment or risk an arbitrary or forced assessment by the Commission. We agree with the Chancellor that the Commission, acting as the Board of Equalization, pursuant to Tenn.Code Ann. § 67–831(b) (Cum.Sup.1982), had substantial and material evidence before it in the context of this hearing.

The jurisdiction of the State Board of Equalization is defined in Tenn.Code Ann. § 67–831(a) (1976):

> The state board of equalization shall have jurisdiction over the valuation, classification and assessment of all properties in the state. Said board shall have and perform the following duties:
>
> (1) Receive, hear, consider, and act upon complaints and appeals made to the board;
>
> (2) Hear and determine complaints and appeals made to the board concerning exemption of property from taxation;
>
> (3) *Take whatever steps it deems are necessary* to effect the equalization of assessments, in any taxing jurisdiction within the state in accordance with the laws of the state; and
>
> (4) Carry out such other duties as are required by law. (Emphasis added).

In view of the express provision of Tenn. Code Ann. § 67–620, authorizing a forced assessment and the further provision requiring a filing of a schedule by a taxpayer as a condition to appeal, it is logical to find authorization in the State Board of Equalization to make a forced assessment, absent any proof from the taxpayer. This is fortified by the express authorization to the State Board of Equalization to "Take whatever steps it deems necessary to effect the equalization of assessments, in any taxing jurisdiction within the state in accordance with the laws of the state." Tenn.Code Ann. § 67–831(a)(3) (1976).

The action of the Trial Court is affirmed, and the costs of this appeal are taxed against the appellant, West Coal Company, for which execution may issue if necessary.

TOMLIN and HIGHERS, JJ., concur.

