IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

IN THE MATTER OF:
ALL ASSESSMENTS

**FILED**

August 20, 1999

Cecil Crowson, Jr.
**Appellate Court Clerk**

REVIEW OF *AD VALOREM*
ASSESSMENTS OF PUBLIC
UTILITY COMPANIES FOR
TAX YEAR 1998

C.A. No. 01A01-9812-BC-00642

FROM THE STATE BOARD OF EQUALIZATION

Paul Krivacka, James L. Murphy III,
James L. Charles of Nashville
**For Appellant, Metropolitan**
**Government of Nashville and**
**Davidson County**

Jeffrey D. Moseley; Bueuger, Moseley,
Carson & Byrd of Franklin
**For Appellant, Williamson County**

Donnie E. Wilson, Robert B. Rolwing
of Memphis
**For Appellant, Shelby County**

Jean Dyer Harrison of Nashville
**For Appellants, Shelby and Williamson**
**Counties**

Paul G. Summers, Attorney General and
Reporter; Jimmy G. Creecy,
Chief Special Counsel
**For Appellee, Tennessee State Board**
**of Equalization**

James W. McBride, Anne M. Stolee,
Stephen D. Goodwin; Baker, Donelson,
Bearman & Caldwell of Memphis and
Washingon, D.C., **For Intervenors,**
**Coalition of Certain Utitlities**

T. Arthur Scott, Jr; Suzanne S. Cook,
Hunter, Smith and Davis of Kingsport,
**For Intervenors, Appallachian**
**Power Co. and Kingsport Power Co.**

Roland M. Lowell; Bruce, Weathers,
Corley, Dughman & Lyle of Nashville,
**For Intervenors, Designated Motor**
**Carriers**

Everett B. Gibson; Bateman Gibson
& Childers of Memphis, **For**
**Intervenors, Colonial Pipeline and**
**MCI**

C. Dale Allan, Harry S. Mattice, Jr.,
Thomas Anthony Swafford; Miller,
Martin & Trabue of Nashville,
**Amicus Curiae, Tennessee Trucking**
**Association**

Charles A. Trost, Michael G. Stewart;
Waller Lansden Dortch & Davis of
Nashville, **Amicus Curiae,**
**Tennessee Association of Business**

*REVERSED AND REMANDED*

**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

CONCUR:

**ALAN E. HIGHERS, JUDGE**

**HOLLY KIRBY LILLARD, JUDGE**

This case is a direct appeal of administrative proceedings of the Tennessee State Board

of Equalization (Board). Petitioners/Appellants, Metropolitan Government of Nashville and

Davidson County, Shelby County, and Williamson County, seek review of the Board's grant of

equalization relief to centrally assessed public utility taxpayers by reducing their tangible personal property valuations by fifteen percent for the 1998 tax year.

Before discussing the merits of this appeal, a brief overview of the taxing procedures may prove helpful. The authority to tax property is established by Article II, Section 28 of the Tennessee Constitution. For purposes of taxation, Article II, Section 28 classifies all property into three classes: real property, tangible personal property, and intangible personal property.[1] As pertinent to the case before us, Article II, Section 28 further provides:

> Tangible Personal Property shall be classified into three (3) subclassifications and assessed as follows:
> (a) Public Utility Property, to be assessed at fifty-five (55%) percent of its value;
> (b) Industrial and Commercial Property, to be assessed at thirty (30%) percent of its value; and
> (c) All other Tangible Personal Property, to be assessed at five (5%) percent of its value. . . .

> \*          \*          \*

> The ratio of assessment to value of property in each class or subclass shall be equal and uniform throughout the State, the value and definition of property in each class or subclass to be ascertained in such manner as the Legislature shall direct. Each respective taxing authority shall apply the same tax rate to all property within its jurisdiction.

The procedure for valuing and assessing property for tax purposes is provided in T.C.A. § 67-5-101 *et seq.* (1998). Most commercial, industrial, and residential property is valued and assessed locally by county assessors. T.C.A. §§ 67-5-102, 103. Assessments of personal property are made annually primarily on the basis of information supplied by the property owner in schedules filed with the assessor. T.C.A. §§ 67-5-902, 903. Under T.C.A. § 67-5-903(f), fixed rates of allowable depreciation costs are established for valuing the nine categories of locally assessed business and industrial personal property.[2]

With regard to public utility and common carrier property, the property is centrally

---

[1] Real property is divided into four subclassifications with varying assessment percentages. As for intangible property, the legislature is given the authority to establish classifications and assessment percentages for such.

[2] T.C.A. § 67-5-903 is not applicable to public utilities since public utility personal property is valued and assessed by the comptroller of the treasury. T.C.A. §§ 67-5-1301, 1303, 1314.

assessed annually by the comptroller of the treasury. T.C.A. § 67-5-1301.[3] The comptroller must complete the assessments and send notice to the property owner by the first Monday in August. T.C.A. § 67-5-1327(a). Thereafter, the property owner or any taxing authority may file exceptions to the assessment, and the assessments will be acted upon by the comptroller within the time prescribed. T.C.A. § 67-5-1327(b). By the first Monday in September, the comptroller must file the assessments with the State Board of Equalization. The comptroller is also required to notify any person or entity that filed an exception of the action taken on the exception. Within the time prescribed, such person or entity may file further exceptions with the Board. T.C.A. § 67-5-1327(c).

The Board then reviews the assessments as authorized and directed by the provisions of T.C.A. § 67-5-1328. On or before the third Monday in October, the Board is required to certify to the comptroller of the treasury "the valuation fixed by it upon each property assessed." T.C.A. § 67-5-1329. The comptroller is then required to certify to the counties and municipalities the valuation from the Board which is the amount to be taxed in the respective taxing jurisdictions. T.C.A. § 67-5-1331.

The seeds for the present dispute were sown by the disposition of two prior controversies. The first involved a lawsuit in federal court filed by various railroad and air carriers against the Board. Basically, the plaintiffs contended that amendments to T.C.A. § 67-5-903, mandating the use of statutory depreciable life schedules in the valuation of commercial and industrial tangible personal property by local assessors, resulted in an arbitrary and substantial reduction in the assessment valuation of locally assessed commercial and industrial personal property. These suits alleged violations of the Railroad Revitalization and Regulatory Reform Act of 1976, 49 U.S.C. § 11501, and the Airport and Airway Improvement Act of 1982, 49 U.S.C. § 40116(d),[4] in that the plaintiffs were centrally assessed by the comptroller at 100% of value while locally assessed commercial and industrial property was assessed at less than 100% of

---

[3] The property owner is required to annually file "under oath, schedules and statements giving [information as prescribed in statute] concerning all properties owned or leased by such owners." T.C.A. § 67-5-1303. The comptroller makes the assessment as provided in T.C.A. § 67-5-1302.

[4] These statutes require that rail transportation property, and air carrier transportation property be assessed the same as other commercial and industrial classified property. In general, these federal statutes prohibit any discrimination in the valuation or assessment of the protected utilities in comparison to locally assessed commercial and industrial property.

value because of application of the personal property schedules in T.C.A. § 67-5-903. This allegedly resulted in prohibited discriminatory property taxation.

These parties ultimately reached a compromise and settlement. Under the settlement, the plaintiffs were given a 15% reduction in their personal property tax valuations for the tax years at issue as well as future years "so long as T.C.A. § 67-5-903(f) is not amended or superseded by legislative action or unless the Board determines, after an appropriate rule-making or declaratory proceeding allowing public comment, that the depreciation schedules reflect fair market value."

The second controversy involved an appeal before the Board by BellSouth Telecommunications, Inc. (BellSouth), in a proceeding involving Hamilton County and the City of Chattanooga. Metropolitan Government of Nashville and Davidson County, Williamson County, and Shelby County intervened in that appeal. BellSouth was seeking a fifteen percent reduction in the valuation of its personal property for the 1994-1997 tax years on grounds that the assessment violated the federal and state constitutions and provisions of state statutes. On September 30, 1997, the Board reduced 1997 personal property valuations of public utilities by fifteen percent, referring to its previous fifteen percent reduction to the airlines and railroads in the settlement of the above-noted lawsuits. The intervenors filed exceptions to this action, and while the matter was pending before the Board, the intervenors and petitioners joined in a compromise and settlement agreement with BellSouth in which BellSouth would dismiss its tax appeals for the 1994, 1995, and 1996 tax years but would be granted a fifteen percent reduction in the valuation of its personal property for tax years 1997 and 1998. The comptroller on behalf of the Board joined in the agreement and further agreed to conduct a declaratory proceeding to receive evidence on whether the locally assessed commercial and industrial personal property is being valued at full market value by virtue of the use of the form prescribed in T.C.A. § 67-5-903(f).[5]

The controversy resulting in this appeal had its inception August 3, 1998, when the comptroller notified all public utility and transportation companies in Tennessee of their 1998 ad valorem tax assessments which provided for a fifteen percent reduction in value as given to

---

[5] This declaratory proceeding was scheduled to be held May 3 - 7, 1999.

BellSouth in the previous compromise and settlement. The counties and municipalities were also notified of the assessments, and the Petitioners herein, pursuant to T.C.A. § 67-5-1327(b), filed exceptions with the comptroller to all centrally assessed property assessments except the BellSouth assessment.

On September 8, 1998, pursuant to T.C.A. § 67-5-1327(c), the comptroller certified the 1998 ad valorem property tax assessments of public utility property to the Board. The Petitioners again filed exceptions contending that the assessment figures for centrally assessed public utility property should not be equalized to the level of locally assessed property on the basis that the locally assessed property was undervalued and that the comptroller had valued public utility property at less than 100% of its full market value.

On October 5, 1998, the Board convened to consider the 1998 ad valorem assessments of public utility and common carriers' property and to consider any exceptions filed. By order dated October 15, 1998, the Petitioners' exceptions were denied, and the Board granted a 15% reduction to public utilities and common carriers in their personal property valuations for the 1998 tax year.[6] The order provides in pertinent part:

> With regard to equalization, the Board finds that settlements of past claims oblige the Board to grant the 15% personalty equalization adjustment recognized for tax year 1997, to most public utility taxpayers for 1998. The remaining minority of taxpayers, not directly party to these settlements, should be extended the same relief for the equitable considerations we cited in 1997. This adjustment is mandated under the settlements so long as there are no legislative amendments to the local business personalty depreciation statute (Tenn. Code Ann. § 67-5-903), or judicial or administrative findings regarding the statute that are inconsistent with the rationale of the adjustment. Although an administrative proceeding is pending which will consider the effects of § 67-5-903, disposition is not near enough to warrant a lengthy delay in certifying the 1998 public utility assessments.

---

[6] Twenty-five percent of the 1998 public utility personal property assessments are attributable to federally protected utilities which received a 15% reduction in their personal property valuations due to the aforementioned federal court settlement. Thirty percent of the 1998 total public utility personal property assessment is attributable to BellSouth which received a 15% reduction in its personal property valuation pursuant to the aforementioned agreement with the Petitioners. The remaining forty-five percent of the public utility personal property assessment was equalized using the 15% personal property reduction in valuation for 1998 by the Board. On October 27, 1998, pursuant to T.C.A. § 67-5-1329(a), the Board certified to the comptroller the valuation fixed upon ad valorem property assessments of public utility property in Tennessee for the 1998 tax year.

Pursuant to the Tennessee Uniform Administrative Procedures Act,[7] and in accordance with T.R.A.P. 12(I),[8] Petitioners, Shelby County and Williamson County, and Metropolitan Government of Nashville and Davidson County, duly filed in this Court, Petitions for Review of the Board's October 15, 1998 order.

Petitioners submit the following issues for review:

> 1. Whether the Tennessee State Board of Equalization's grant of a fifteen percent reduction in the assessed value of centrally-assessed public utility tangible personal property that was not subject to a settlement agreement was erroneous and in excess of its authority.

> 2. Whether a reduction in the assessed value of public utility tangible personal property is the appropriate remedy if locally-assessed property is undervalued.

In addition to the foregoing issues, Petitioners, Shelby County and Williamson County, present the following issue for review:

> 3. Whether personal property values achieved by using the depreciable lives in Tenn. Code Ann. §. 67-5-903(f) comply with Article II, Section 28, of the Tennessee Constitution and the Fourteenth Amendment of the United States Constitution.

We do not consider issues two and three to be involved in this appeal. The order appealed equalized the assessments by granting a fifteen percent reduction to centrally assessed utilities because that relief had previously been granted to BellSouth in a compromise and settlement agreement to which the Petitioners were parties. Admittedly, the controversy in the BellSouth matter involved the application and legality of the depreciation schedules authorized for locally assessed tangible personal property. However, Petitioners in this proceeding presented no evidence concerning the filed exceptions and, in fact, candidly admit that they have

---

[7] T.C.A. § 4-5-322 provides, in pertinent part, as follows:

> **4-5-322. Judicial review. --** (a)(1) A person who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter, which shall be the only available method of judicial review. . . .
>
> \*        \*        \*
>
> (b)(1) . . . A person who is aggrieved by any final decision of the Tennessee regulatory authority, or by a final decision of the state board of equalization in a contested case involving centrally assessed utility property assessed in accordance with title 67, chapter 5, part 13, shall file any petition for review with the middle division of the court of appeals.

[8] T.R.A.P. 12(I) provides the procedure to be followed for direct review of administrative proceedings by the Court of Appeals.

chosen this same forum in a separate proceeding to contest the application and constitutionality of T.C.A. § 67-5-903(f). Under the circumstances, we perceive that under the issue presented, we must determine if the Board's action in reducing the valuation of the properties of the centrally assessed public utilities was within its authority as established by the state constitution and statutes, and whether there is substantial and material evidence to support the decision.

T.C.A. § 4-5-322(h) sets forth the standard of review on appeal of administrative proceedings and provides as follows:

> (h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (5) Unsupported by evidence which is both substantial and material in the light of the entire record.
> In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

As quoted above, in reviewing an administrative decision, a court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." T.C.A. § 4-5-322(h)(5); *Humana of Tennessee v. Tennessee Health Facilities Comm'n*, 551 S.W.2d 664 (Tenn. 1977). Factual issues are reviewed upon a standard of substantial and material evidence, and not upon a broad, *de novo* review. *Southern Ry. Co. v. State Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn. 1984) (citing *CF Indus. v. Tennessee Pub. Serv. Comm'n*, 599 S.W.2d 536, 540 (Tenn. 1980)). Substantial and material evidence is "'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.'" *Sweet v. State Tech. Inst. at Memphis*, 617 S.W.2d 158, 161 (Tenn. App. 1981) (quoting *Pace v. Garbage Disposal Dist. of Washington County*, 54 Tenn. App. 263, 390 S.W.2d 461, 463 (1965)). It is "something less than a preponderance of the evidence, but more than a scintilla or glimmer." *Wayne County v. Tennessee Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. App. 1988). A court will not disturb a reasonable decision of an agency with expertise, experience, and knowledge

7

in the appropriate field. *Southern Ry. Co.*, 682 S.W.2d at 199.

With regard to their first issue, the Petitioners argue that the Board's decision to grant the 15% reduction at issue was made upon unlawful procedure and was not supported by substantial and material evidence because the Board never conducted a fact-finding hearing. Moreover, the Petitioners assert that the Board acted outside the scope of its constitutional and statutory authority in granting the reduction. The Board, however, asserts that its final decision and order of October 15, 1998 was correct, in accord with its statutory authority, and was made upon lawful procedure.

The Petitioners first assert that the Board's action without conducting a hearing on a clearly contested case was made upon unlawful procedure. They assert that the Board, although required to conduct a hearing, denied the Petitioners' request for a full hearing and granted the subject reduction.

The Board asserts that the case was scheduled for a hearing on October 5, 1998, and the Petitioners were given the opportunity to offer proof in regard to their exceptions but that none was offered.

The record reflects that the notice of the hearing pursuant to T.C.A. § 4-5-203 stated in pertinent part as follows: "If you have filed a letter of exception with the Board challenging valuation, you must appear at this hearing and present evidence in support of your claim unless you have reached an agreement with the Commission staff regarding the assessment or how evidence on your behalf will be presented."

During the hearing, the Board allowed the Petitioners to present their case with regard to their exceptions. After being called before the Board, the Petitioners' attorney responded as follows:

> MR. KRIVACKA: Members of the Board, my name is Paul Krivacka. I'm an attorney with Metro Legal. As far as the valuation claims, in light of the complexity of -- of evaluating the vast amounts of data available, certainly we're not ready to proceed today. That was never our understanding. It was our understanding today would be more or less a calendar call to refer to either to an ALJ or to the Assessment Appeals Commission.
> But in light of that, in the short time in which assessments are actually made, certainly, we're not prepared to show you with expert testimony what the value of the public utilities assessments are. . . .

It appears that the Board gave the Petitioners an opportunity to be heard, and the

Petitioners, contrary to the position taken by Mr. Krivacka, were notified and should have known the nature and extent of the proceedings on October 5, 1998. Petitioners' assertions in this regard are without merit.

The Petitioners also assert that the Board's action in granting the 15% reduction was outside the scope of its statutory authority. The Petitioners argue that the Board's action in granting the 15% reduction to public utility taxpayers in an attempt to equalize the assessments of centrally assessed public utility tangible personal property to the presumed prevailing level of value for locally assessed commercial and industrial tangible personal property violated its obligation to act in accordance with the constitutional and statutory mandate that all property be valued at one hundred percent of its fair market value.

On the other hand, the Board asserts that it is empowered to "[t]ake whatever steps it deems are necessary to effect the equalization of assessments," T.C.A. § 67-5-1501(b)(3), and specifically "[e]qualization may be made by the board . . . by reducing or increasing the appraised values of properties within any taxing jurisdiction, . . . in such manner as is determined by the state board of equalization will enable the board . . . to justly and equitably equalize assessments in accordance with law." T.C.A. § 67-5-1509(b).

The powers and duties of the Board as stated in T.C.A. § 4-3-5103 are in pertinent part as follows:

> **4-3-5103. Powers and duties of board. --** The state board of equalization has the following duties and functions to:
>
> \*   \*   \*
>
> (2) Effect the assessment of all property in the state in accordance with the Constitution of Tennessee and all statutory provisions. The state board shall exercise powers conferred upon it by law to the end that assessments in every taxing jurisdiction may be in accordance with the law;
>
> \*   \*   \*
>
> (4) Receive, hear, consider and act upon complaints and appeals made to the board regarding the valuation, classification and assessment of property in the state;
>
> \*   \*   \*
>
> (6) Review assessments made by the comptroller of the treasury;
>
> \*   \*   \*

Furthermore, T.C.A. § 67-5-1501 provides in pertinent part as follows:

> **67-5-1501. Jurisdiction and duties -- Filing of appeals. --** (a) The state board of equalization has jurisdiction over the valuation, classification and assessment of all properties in the state.
>
> (b) The board shall have and perform the following duties:

9

(1) Receive, hear, consider and act upon complaints and appeals made to the board;

(2) Hear and determine complaints and appeals made to the board concerning exemption of property from taxation;

(3) Take whatever steps it deems are necessary to effect the equalization of assessments, in any taxing jurisdiction within the state in accordance with the laws of the state;

(4) Carry out such other duties as are required by law; and

(5) Provide assistance and information on request to members and committees of the general assembly relative to the taxation, classification and evaluation of property.

T.C.A. § 67-5-1509 further provides in pertinent part:

**67-5-1509. Equalization action by state board. --** (a) Upon its consideration of reports made to it, together with the evidence submitted therewith or other information available, the state board or the assessment appeals commission, if such has been created by the state board under § 67-5-1502, shall take whatever steps it deems are necessary to effect the assessment of property in accordance with the constitution of Tennessee and the laws of this state. . . .

(b) Equalization may be made by the board or commission, as the case may be, by reducing or increasing the appraised values of properties within any taxing jurisdiction, or any part thereof, in such manner as is determined by the state board of equalization will enable the board or commission to justly and equitably equalize assessments in accordance with law.

In addition, T.C.A. § 67-5-1328(a)(1) grants the Board the authority "to increase or diminish the valuation placed upon any property valued by the comptroller of the treasury."

Petitioners acknowledge that the Board has broad powers to equalize assessments but asserts that the authorizing statutes are consistent in providing that assessment and equalization must be in accordance with the state constitution and statutes. *See, e.g.,* T.C.A. § 67-5-1501(b)(3), § 67-5-1509(a)-(b), and § 4-3-5103(2). They assert that Article II, Section 28 of the Constitution of Tennessee requires valuation of taxable property at one hundred percent of full market value and a fifteen percent reduction in value violates the constitutional mandate.

The legislature is authorized to establish the criteria for the determination of value of taxable property. Tenn. Const. art. II, § 28. Pursuant to this authority, the legislature has pronounced that:

(a) The value of all property shall be ascertained from the evidence of its sound, intrinsic and immediate value, for purposes of sale between a willing seller and a willing buyer without consideration of speculative values, and when appropriate, subject to the provisions of the Agricultural, Forest and Open Space Land Act of 1976, codified in part 10 of this chapter.

T.C.A. § 67-5-601(a).

Thus, we are squarely faced with the question of whether the Board or the Board's action in the instant case is "in accordance with the constitution of Tennessee and the laws of this state." T.C.A. § 67-5-1509(a).

The Petitioners assert that the Board's action was made without substantial and material evidence. The Petitioners point out that the Board based the grant of equalization relief on a prior settlement agreement and on notions of equity. They argue that the settlement agreements cannot constitute substantial and material evidence of valuation or disparity in valuation nor does equity constitute the substantial and material evidence necessary to warrant the grant of relief to all centrally assessed public utility personal property.

The Board asserts that its decision to grant a 15% reduction in value as allowed BellSouth was based on several factors, as stated in its brief:

> (1) The Board had granted the 15% reduction for all public utility personal property for the tax year 1997 based upon the settlement of the lawsuit involving the federally protected utilities (railroads, airlines, and common carriers) and out of fairness and equity to the remaining utilities. The Board's authority for this decision is set forth in T.C.A. §§ 67-5-1509(b), 67-5-1328(a)(1). The Petitioners herein agreed to the 1997 tax year reduction.

> (2) As part of the settlement between BellSouth and the Petitioners involving the 1997 and 1998 personal property tax years the State Board agreed to conduct a declaratory proceeding to receive evidence upon whether the 15% reduction in the assessment of public utility personal property is an appropriate reduction in the future to equalize public utility companies with locally assessed commercial and industrial personal property valued under T.C.A. § 67-5-903. This proceeding is presently pending for hearing before an administrative law judge in May, 1999. The Petitioners are full and active participants in that proceeding. The issues which Petitioners attempt to raise in this petition for appeal will be addressed in that proceeding.

> (3) The public utilities affected by the Petitioners in this case comprise the smaller utilities in Tennessee and amount to 45% of the total public utility property tax assessment. It is hypocritical for the Petitioners to on one hand agree to grant BellSouth the 15% reduction for 1998 [BellSouth constitutes 30% of the total public utility personal property assessment in Tennessee] but on the other hand contend that the Board's action violates Article II, Section 28 of the Tennessee Constitution and unfairly increases the tax burden on other taxpayers. Petitioners also oddly request that the assessment for these remaining public utility taxpayers be delayed until the declaratory proceeding is concluded. Petitioners' position in the case before the Court is awkward and disingenuous and they should be precluded from taking opposite positions in the same proceeding. . . .

> (4) Under T.C.A. § 67-5-1329(a), the State Board is directed to

11

certify to the Comptroller the valuation fixed upon public utility property on or before the third Monday in October of the tax year under consideration. As a practical matter, to delay the certification of the 1998 public utility personal property assessments until the declaratory proceeding is concluded would substantially delay the tax assessments and work a hardship on the taxpayers and the remaining 96 counties that do not contest the Board's decision. The Board acted "justly and equitably" in not delaying the 1998 assessment. T.C.A. § 67-5-1509(b).

(5) The statutory grounds of authority granted the State Board are broad. The Broad is authorized by the State Legislature to "take whatever steps it deems are necessary to effect the assessment of property," T.C.A. §§ 67-5-1501(b)(3), 67-5-1509(a). Equalization may be made by the Board by reducing or increasing appraised values which in the judgment of the Board will enable it to "justly and equitably equalize assessments." T.C.A. § 67-5-1509(b). It is precisely this fairness and equitable standard that the Board utilized in granting the 15% reduction in assessment in its Order of October 15, 1998.

The Board insists that there is substantial and material evidence to warrant the reduction at issue. Although we find troubling the action of the Petitioners in agreeing to and being a party to BellSouth's settlement, we have difficulty equating Petitioners' action as material and substantial evidence on the value of the public utility property. We must assume, in the absence of any evidence in the record to the contrary, the assessment submitted by the comptroller before applying any fifteen percent reduction constituted 55% of the fair market value of the property. The Petitioners take the position that the Board had no authority to reduce the public utility assessments unless they were assessed over their fair market value, relying upon *Carroll v. Alsup*, 107 Tenn. 257, 64 S.W. 193 (1901).

In *Carroll*, the taxpayer (Carroll) filed suit to recover state and county taxes paid under protest on the ground that they were illegally assessed and collected because the property was assessed at ninety percent of actual cash value and the other properties in the county were assessed at seventy-five percent, sixty percent, and forty percent of value, and for another reason not material herein. The Court held, among other things, that in order for Carroll's assessment to be declared illegal, he must show that his property appraisal exceeded the actual cash value of the property. In *Southern Ry. Co. v. Clement*, 57 Tenn. App. 54, 415 S.W.2d 146 (1966), this Court noted that *Carroll* stands for the proposition that it is the policy and object of the law in cases of unequal assessments, "not to reduce assessments on property unless it had been assessed beyond its actual value but instead to raise up to that valuation all property that had been

inadequately assessed and, thus, to equalize taxation on all property; that the recourse offered to the taxpayers was not to reduce his own assessment unless it was beyond its actual cash value, but to have that of his neighbor increased until both reach the point of actual cash value and, thus, become equal and uniform." *Id.* at 153.

In response to Petitioners' assertion, the Board points out that it had no duty to raise any assessment, but to the contrary could lower the assessment because the courts have recognized the authority of the legislature to ascertain and direct the determination of value for tax purposes. We have no quarrel with the fact that the legislature is given the authority to define value as something other than a willing buyer/willing seller fair market value standard. *See Sherwood Co. v. Clary*, 734 S.W.2d 318 (Tenn. 1987). But, we point out a distinct difference in that situation than what we have in the present situation. As stated, the legislature has the authority to define value, and we know of no authority for the Board to take such action.

In the instant case, the Board concedes that it had reduced the value of the public utility property to fifteen percent below the fair market value. Admittedly, the action of the Board was to equalize assessments and thus equitably treat the public utility taxpayer. However, notwithstanding this commendable approach and our reluctance to interfere with basic fairness, we have no alternative, based upon the clear mandate of the constitution and statutes of this State, than to reverse the Board's order. We simply find no authorization for the Board to reduce the valuation of taxable property below the fair market value of the property absent legislative authorization to do so. We have found no legislative authorization. However commendable, the action of the Board in furthering the purpose of fairness and equity, we cannot find legal justification for the action.

Accordingly, the order of the Board of Equalization allowing a fifteen percent reduction in the valuations of the forty-five percent of remaining public utility property is reversed. The case is remanded to the Board for such further proceedings as may be necessary. This decision is applicable only to the three appealing parties herein. *See Pickett v. Gore*, 58 S.W. 402 (Tenn. Ch. App. 1900). Costs of the appeal are assessed against the Board.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

13

_____

**ALAN E. HIGHERS, JUDGE**


_____

**HOLLY KIRBY LILLARD, JUDGE**